IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN HAMPTON,** | : | CIVIL NO. 1:15-CV-897 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JOHN E. WETZEL**, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Shawn Hampton ("Hampton"), an inmate currently confined at the Rockview State Correctional Institution in Bellefonte, Pennsylvania ("SCI-Rockview"), commenced this action on May 8, 2015 pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as defendants are the following employees of the Pennsylvania Department of Corrections ("DOC"): Wetzel, Glunt, Liptak, Brittain, Collins, Smith, Marsh, Varner, and Pownall. (Id. at 1-2). Also named as defendants are the following employees of the Pennsylvania Board of Probation and Parole ("Board"): Spicer, Tuttle, and White[1]. (Id.)[2]

---

[1] The court notes that defendant White is deceased. (Doc. 1, at 3, ¶ 50; Doc. 13, at 2), and Hampton seeks relief from White's estate. (Doc. 1, at 3, ¶ 50).

[2] The complaint also named as defendants former Governor Corbett and Governor Wolf. (Doc. 1, at 1). These defendants were dismissed as parties to this action on May 20, 2015. (Docs. 7, 8).

Before the court is defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the motion will be granted.

## I. Standard of Review

A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment. Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The motion is decided under the same standard as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b). See Spruill v. Gillis, 372 F.3d 218, 223, n. 2 (3d Cir. 2004) ("There is no material difference in the applicable legal standards."). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

## II. Allegations in the Complaint

The complaint names as defendants John Wetzel, Secretary of the DOC; Steven Glunt, Superintendent at SCI-Rockview; Liptak, former Sex Offender Program ("SOP") Director at SCI-Rockview; Brittain, current SOP Director at SCI-Rockview; Collins, Psychologist, SOP Facilitator at SCI-Rockview; Smith, Psychologist, SOP Facilitator at SCI-Rockview; Robert Marsh, Chief Psychologist at SCI-Rockview; Varner, Chief Grievance Officer; Pownall, Treatment Specialist;

Spicer, Parole Agent; Tuttle, acting Chairman of the Pennsylvania Board of Probation and Parole, and White, former Chairman of the Pennsylvania Board of Probation and Parole. (Doc. 1, at 1-2).

Hampton is serving a five to ten year prison sentence in the custody of the Pennsylvania DOC. (Id. at 2). He claims that he will not be eligible for parole until he completes the mandatory sex offender program at SCI-Rockview. (Id.) Hampton challenges his expulsion on three occasions from the sex offender program at SCI-Rockview. (Id.) Hampton alleges that his Eighth and Fourteenth Amendment rights were violated because he was prevented from completing the sex offender program, which in turn has rendered him ineligible for a Parole Hearing. (Id.)

Hampton seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (Id. at 3-4).

## III.  Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). See also Barna v. City of Perth Amboy, 42 F.3d 809, 815 (3d Cir. 1994).

    A.    Denial of Parole

There are two avenues under federal law by which a plaintiff can seek relief on complaints related to imprisonment, namely, a petition for writ of habeas corpus, and a complaint under 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration may be raised in a petition for writ of habeas corpus. See Preiser v. Rodroguez, 411 U.S. 475, 500 (1973). Requests for relief turning on circumstances of confinement may be presented in a § 1983 action. See Muhammad v. Close, 540 U.S. 749, 750 (2004). The United States Supreme Court discussed the boundary separating habeas corpus and § 1983 in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-487. When a state prisoner seeks

damages in a § 1983 suit, the district court must evaluate whether judgment in the plaintiff's favor would necessarily imply the invalidity of his or her sentence. Id. at 487. If it would, and the sentence has not already been invalidated, the complaint must be dismissed. Id.

Defendants argue that, to the extent Hampton seeks release from confinement, starting with his request for a parole hearing, such relief is not available *via* Section 1983. (Doc. 15, at 3-5). Defendants assert that Hampton's claim is essentially a challenge to the duration of his confinement. Hence, it is not the proper subject of a Section 1983 action, and should be raised in a habeas petition. (Id.) Further, defendants argue that the holding in Heck mandates dismissal of this case. (Id.) Hampton clarifies that he is not seeking to be automatically paroled, but rather to have an interview with the Parole Board. (Doc. 16, at 2-3). He claims that his constitutional rights were violated when the Parole Board refused to grant him a parole hearing based on his failure to complete the sex offender program. Section 1983 remains available for procedural challenges where success would not necessarily spell immediate or speedier release for the prisoner. See Wilkinson v. Dotson, 544 U.S. 74 (2005). Here, it is not necessarily true that Hampton would be paroled if he completed the sex offender program and was granted a parole hearing. Thus, the court will not dismiss Hampton's complaint as improperly raised in a Section 1983 action, nor as barred by Heck.

B.  Eighth Amendment Claim

The Eighth Amendment protects prison inmates from cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. See Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (1994). A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). Mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

Hampton appears to allege that the denial of parole hearings based on his failure to complete the sex offender program violates his Eighth Amendment rights. However, he fails to set forth any facts in support of an Eighth Amendment claim. While it is true that detention beyond the expiration of a term constitutes punishment within the meaning of the Eighth Amendment, Hampton does not

6

allege that he was detained beyond his maximum sentence date.  See Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989) ("[T]here can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment.").  Hampton states that he was sentenced to a five to ten year term of imprisonment, with his minimum date of incarceration on September 30, 2014.  (Doc. 1, ¶¶ 2, 12).  He makes no claims regarding detention beyond his maximum sentence date.  Clearly, Hampton has failed to allege any facts to establish a violation of his Eighth Amendment rights.

      C.      Fourteenth Amendment Procedural Due Process Claim

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ."  U.S. CONST., amend. XIV.  The United States Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

    In order to constitute a protected liberty interest, an individual must have a legitimate claim of entitlement to the subject of the deprivation, in this case, a parole hearing, which rises to more than a unilateral hope, or expectation of it. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).  It is well-

settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  Instead, a liberty interest for purposes of parole must arise from state statutes or regulations.

The Pennsylvania Probation and Parole Act does not grant prisoners any constitutionally-protected liberty interest in being released on parole or reparole prior to the expiration of their maximum terms.  See McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs).  Pennsylvania law unambiguously provides that a prisoner is not entitled to release from prison until the expiration of his maximum sentence.[3]  Nothing in the Pennsylvania Parole Act, or any other provision of Pennsylvania law, requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  See Board of Pardons v. Allen, 482 U.S. 369, 373 (1987) (the existence of a state parole system alone does not create a constitutionally-protected interest).  The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls.  See Tubbs v. Pennsylvania Bd. of Probation and Parole, 152 Pa. Cmwlth. 627, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) (stating, "it is well settled under Pennsylvania law that a prisoner has no constitutionally

---

[3] A prisoner's sentence is his maximum term.  Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).

protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term ... the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 536 Pa. 635, 637 A.2d 295 (Pa. 1993).

In the instant action, Hampton seeks an interview with the Parole Board to address his application for parole. (Doc. 1, ¶¶ 13-29, 48). However, Hampton failed to establish any constitutionally protected interest in a parole interview. In the absence of a state statute which creates a liberty interest by conferring a "protectible expectation of parole," the safeguards imposed by the due process clause do not apply. Greenholtz, 442 U.S. at 11; Debrose v. Chesney, 1996 WL 4093, at *2, n.3 (E.D. Pa. Jan. 2, 1996) ("the board's practice has been to interview inmates as part of the review of parole applications ... however, no right to such an interview has been established"). Since Pennsylvania has not created a liberty interest in parole, Hampton is not facing any constitutionally protected harm.

Moreover, Hampton acknowledges that the Board denied his application for a parole interview based on his failure to successfully complete the sex offender program. (Doc. 16, at 13). To the extent Hampton argues that the sex offender statute merely requires that participation in the program, as opposed to completion of the program, this claim likewise fails. The Sex Offender Treatment Statute, 42 Pa. C.S.A. § 9718.1, requires prisoners to undergo treatment in the form of a DOC program of counseling or therapy to be eligible for parole. The statute gives the Department of Corrections "the sole discretion with respect to counseling or therapy program contents and administration, including the scheduling of an

9

offender's attendance and participation." 42 Pa. C.S.A. § 9718.1(c).  See, e.g., Pleaze v. Klem, 335 F. App'x 168, 171-72 (3d Cir. 2009) (even absent § 9718.1, the Parole Board was free to reject a prisoner's application for parole due to his failure to complete a recommended program).[4]

Because Hampton has no liberty interest in obtaining parole under Pennsylvania law, he cannot contest the constitutionality of procedural devices attendant to parole decisions, such as scheduling parole hearings.

D.      Fourteenth Amendment Substantive Due Process Claim

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  Conduct can violate substantive due process if it "'shocks the conscience,' which encompasses 'only the most egregious official conduct.'"  Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir. 2003)).  The conduct must be "intended to injure in some way unjustifiable by any government interest...." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).

Hampton claims that his removal from the sex offender program violated his substantive due process rights.  However, Hampton acknowledges that he failed to complete the SOP on three occasions, he was advised to complete the SOP, and that

---

[4] Although non-precedential, the court cites Pleaze, supra as its *ratio decidendi* in persuasive.

10

he is on a waiting list to participate in the SOP in the future. Hampton failed to allege any actions by defendants that were "conscience shocking." Moreover, because there is no constitutional right to parole, any substantive due process claim is foreclosed. See Thorpe v. Grillo, 80 F. App'x 215 (3d Cir. 2003).

  E. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)). An equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); see also Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. See Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 423 (3d Cir. 2000). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. See Vill. of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole

motivating factor.  See Vill. of Arlington Heights, 429 U.S. at 265-66.  Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment.  See Bd. of Trustees v. Garrett, 531 U.S. 356, 367 (2001); Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002).

     Hampton claims that because he is required to complete the sex offender program, defendants have not treated him the same as "other convicts."  (Doc. 1, ¶¶ 13, 29, 31).  Defendants argue that Hampton has failed to meet the threshold requirement of an equal protection claim because he did not allege differential treatment.  (Doc. 15, at 10-12).  Specifically, Hampton does not allege that he is being treated differently from similarly situated individuals because he is a member of a protected class or because he exercises some constitutional right.  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 3017 (3d Cir. 2001) (prisoners are not a suspect class for the purposes of equal protection).  In fact, Hampton has not alleged any facts that, if true, would support the conclusion that he is being treated differently from any similarly situated individual, i.e., other sex offenders.  To the contrary, Hampton explicitly states that he is aware of other sex offender inmates who were removed from the sex offender program, and served their maximum term of imprisonment before they were able to finish the program, thus supporting the conclusion that he was not treated differently by defendants.  (Doc. 16, at 6-8).

     Moreover, Hampton failed to allege that the Board's consideration of an inmate's participation in the sex offender program is not rationally related to a legitimate penological interest.  Indeed, rehabilitation of inmates has been

12

recognized as a "valid penological interest." See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Consequently, Hampton's allegations are insufficient to support a claim for relief under the Equal Protection Clause.

  F.  Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." Id.

Hampton broadly and vaguely asserts that defendants have conspired to violate his rights, yet he has failed to adduce any evidence showing an agreement or plan formulated and executed by the defendants to achieve this conspiracy. See (Doc. 1). Hampton cannot rely on unsupported claims of conspiracy. In a conclusory fashion, the complaint states that, "[t]he only reason that defendant Brittian [sic] refused to fillful [sic] Plaintiff's wishes as to be dropped from the

Batterers['] group to start the SOP group is the conspiracy amongst the defendants." (Doc. 1, ¶ 49). Without a factual showing which gives some substance to this conspiracy claim, Hampton's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. See Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)).

Absent any allegations which would reveal the existence of an agreement designed to deny the constitutional rights of Hampton, he cannot maintain his conspiracy claim. See Hodge v. United States, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing plaintiff's "broad" conspiracy claim because "he does not aver facts sufficient to establish an agreement between the individual defendants to deprive plaintiff of his rights or from which such an agreement could reasonably be inferred").

**IV**.   **Conclusion**

Based on the foregoing, defendants' motion for judgment on the pleadings will be granted.  An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        February 12, 2016